UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARK JOHNCOX,                                          DECISION and ORDER

                    Plaintiff,

          v.                                           12-CV-6526T

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____


**INTRODUCTION**


     Plaintiff, Mark Johncox ("Johncox" or "Plaintiff"), brings this action pursuant to the Social Security Act § 216(i) and § 223, seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record and is contrary to applicable legal standards.

     On March 18, 2013, Plaintiff moved for summary judgment seeking to remand for a new hearing.  On June 12, 2013 the Commissioner cross-moved for judgment on the pleadings pursuant to 42 U.S.C. § 405 (g) on the grounds that the findings of the Commissioner are supported by substantial evidence.

     For the reasons set forth below, this Court finds that there is substantial evidence to support the Commissioner's decision.

Therefore, the Commissioner's motion for judgment on the pleadings is granted and the Plaintiff's motion is denied.

## PROCEDURAL HISTORY

On May 26, 2006, Plaintiff filed an application for DIB under Title II, § 216(i) and § 223 of the Social Security Act, alleging a disability since January 4, 2007 arising from back pain, high cholesterol and acid reflux.  T. 207.  Plaintiff's claim was denied on October 2, 2009.   T. 72-80. At Plaintiff's request, an administrative hearing was conducted on December 14, 2010 before an Administrative Law Judge ("ALJ"). T. 23-52.  Johncox testified at the hearing and was represented by counsel.  In addition, a vocational expert testified.

On January 12, 2011, the ALJ issued a Decision finding that Johncox was not disabled at any time from the alleged onset date through the date last insured, December 31, 2010. T. 54-65, 192.   On June 27, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. T. 4-6.   Plaintiff filed this action on October 1, 2012.

## BACKGROUND

Plaintiff is a 44 year old high school graduate and certified welder who worked as a mason and heavy equipment operator. T. 195. He

claims that he became disabled from back pain after he was in an automobile accident in January, 2007. T. 207. Johncox claims that he can no longer sit for long periods of time, bend over and lift heavy objects. T. 207.

A. Medical History

Plaintiff was treated by Dr. Nathaniel Sutain at the University of Rochester Medical Center ("URMC") following a motor vehicle accident which occurred on January 4, 2007. T. 238-240. Johncox complained of neck and low back pain since the accident.   In addition, he was concerned about a lip laceration and a gap on the inside portion of his lip. Dr. Sutain noted that Plaintiff had a history of depression, anxiety and alcoholism and that he smoked one pack a day as well as drank a 12 pack of beer daily. (T. 239) He had knee arthroscopy twice on the left side and he was taking Vicodin, Wellbutrin and an anti-anxiety medicine. (T. 238)

X-rays of the back taken at URMC showed "mild degenerative changes with no evidence of acute fracture or dislocation." T. 239. Specifically, the x-rays showed mild disc space narrowing at L3-L4 and L4-L5 with endplate changes.  Mild disc disease was also observed at L1-L2. T. 242. Dr. Sutain recommended that Johncox be treated  for degeneration of the low back and sent him for physical therapy for a

flexion based exercise program. T. 240.  He was also encouraged to cease smoking. T. 240.

Johncox was treated by his primary care physician, Dr. David Hannan, of Arcadia Family Practice for a follow up from the motor vehicle accident. T. 332. Dr. Hannan noted that Plaintiff suffered from a lip laceration, neck injury and a concussion from the accident. Dr. Hannan noted that Plaintiff's depression was moderate and had worsened since his last visit. Plaintiff was taking Wellbutrin, Lorazepam, Vicodin and was prescribed physical therapy. T. 332. Dr. Hannan examined Plaintiff again on January 29, 2007 at which time he noted that Plaintiff's neck sprain and cervical pain had improved from last visit but it still required Plaintiff to stay out of work. T. 333.  The medications were continued.

Johncox presented to Newark Wayne Hospital with chest discomfort and EKG changes suggestive of ischemia in February, 13 2007. T. 337, 304. He was put on Heparin and transferred to Rochester General Hospital where he underwent a coronary angiogram which showed 100% occlusion of the proximal LAD. Three stents were put in successfully. T. 304. The medical reports indicate that Plaintiff had a history of depression, illicit drug use and had used cocaine two days prior to hospital admission. T. 304.

Dr. Hannan examined Plaintiff on February 20, 2007. T. 344. He noted that Plaintiff was treated for myocardial infarction but that Plaintiff now had no chest pain nor edema. Plaintiff acknowledged that he used cocaine infrequently and had cut back on smoking to half a pack per day. T. 344. Dr. Hannan continued Plaintiff on Wellbutrin, Vicodin and also recommended physical therapy and counseling for drug use. T. 344. In addition, Plaintiff was prescribed a nicotine patch and Ambien to aid in sleeping. T. 344.

Dr. Hannan's treatment notes of March 20, 2007 indicate that Plaintiff's sprain of his neck has resolved and no further treatment was necessary. T. 348. However, Plaintiff reported that his back pain had worsened. Dr. Hannan recommended continuation of physical therapy and medications, Wellbutrin and Vicodin. T. 348. The medical notes from May 24, 2007 and June 7, 2007 also note continued lower back pain and continue the medications of Wellbutrin and Vicodin. T. 354, 356. In June, Plaintiff reported that he had returned to work on May 31st but that the pain increased. After two days of work, he left and had not returned. The pain was in the lower back and into the left buttock. T. 356. Dr. Hannan prescribed Skelaxin. Two weeks later on June 21, 2007, Plaintiff reported that his back pain had improved but he was still taking Vicodin four times a day and Dr. Hannan discussed decreasing the use of Vicodin. T. 358.

5

On July 3, 2007, Dr. Hannan's treatment records report that Plaintiff's back pain worsened causing a loss of sleep for more than 2.5 hours. T. 359. He was continued on Vicodin and Wellbutrin and a lumbar spine MRI was ordered. T. 359. At this same visit, Dr. Hannan noted that the myocardial infarction was controlled. T. 360.

The MRI results from July 9, 2007 showed normal lordosis and normal height and alignment of vertebral bodies.  It also showed a small left posterolateral disc protrusion at L4-L5 level that compressed the left L5 nerve root as well as a small left paracentral/posterolateral disc protrusion that abuts the left S1 nerve root.  There was also a combination of degenerative changes and congenital short pedicles that result in moderate spinal stenosis at L4-L5, mild to moderate spinal stenosis at L3-L4 and mild spinal stenosis at L2-L3.  Finally, there was mild left sided neural forminal stenosis at L4-L5 level. T. 362-363. Dr. Hannan referred Plaintiff to Dr. James Maxwell, a neurosurgeon on August 13, 2007. T. 364.

In September, 2007, Plaintiff fell from the roof and fractured bones in his right foot. T. 441. Dr. Hopson recommended an internal fixation of the second metatarsal base. T. 441, 443.

In October, 2007, Plaintiff was diagnosed with Hyperlipidemia or high cholesterol as well as abnormal liver function. T. 369.  The

condition had improved by November, 2007 with the adjustment of medications. Plaintiff was continuing to take Wellburtin, Lorazepam, Vicodin as well as Ambien to assist with sleep and Habitrol for nicotine addiction. T. 372.

On October 11, 2007, Plaintiff had an initial consultation with Dr. Webster Pilcher, a neurosurgeon from URMC. T. 575.  Dr. Pilcher recommended a conservative management regimen including that Plaintiff be evaluated by Dr. John Markman and enter an aggressive exercise program with a physical therapist. T. 576.

On November 27, 2007, Plaintiff was examined by Dr. Markman at URMC.  Johncox indicated that he has low back and buttock pain that was brought on and increased in intensity by physical activity such as vacuuming. There was no associated weakness nor sensory deficit. Plaintiff was taking 3 to 8 hydocodone per day to treat the pain. T. 245.

Dr. Markman concluded that given Plaintiff's increased risk for "aberrant drug taking behavior with his current hydocodone regimen, marked acute limitation and inability to return to work, lack of improvement over the last 6 months" he recommended epidural steroid injections. Johncox was treated with epidural steroid injections on December 5, 2007. T. 246, 259.

Dr. Hannan examined Plaintiff on January 4, 2008. T. 375. At this visit, Plaintiff's cholesterol levels had worsened which Dr. Hannan attributed to Plaintiff being off medication and not watching his diet. Dr. Hannan recommended a low fat diet with regular exercise. Dr. Hannan referred Plaintiff to a plastic surgeon to have scar tissue on his lip removed. T. 376. On February 15, 2008, Dr. Hannan referred Plaintiff to VESID for vocational evaluation because Plaintiff had not yet returned to work. T. 379.

On January 7, 2008, Plaintiff was examined by Dr. Hopson for follow up of the fractures in his right foot. Plaintiff reported that he did not do the physical therapy but that the area is tolerable and did not limit him in any way. T. 436.

On April 15, 2008, Dr. Hannan noted that although Plaintiff's cholesterol had improved, his liver function and back pain worsened. T. 382. Johncox noted that the epidural injection from November gave him pain relief for 3 or 4 days but he had not followed up with Dr. Markham. Dr. Hannan continued Plaintiff's prescriptions for Wellbutrin, Lorazepam, Vicodin and Ambien and added Ultram for back pain. T. 382. Plaintiff was referred to a pain management center and back to Dr. Markham for a series of epidural injections. T. 383.

In the June and August, 2008 medical records, Dr. Hannan noted that Plaintiff had continued back pain but that he asked to be

released to return to work. T. 388.   Johncox had an "unfavorable
interaction with pain medicine consultant." T. 388.   He wanted to
return to work as a factory worker. Also, Plaintiff stated that he
last used cocaine three to four months prior but he doesn't use it
that often. T. 388. In November, 2008, Plaintiff's cholesterol and
liver functions were reported as controlled and his back pain as
improved. T. 392-393.   Plaintiff was cleared to return to work.
T. 393.

In January, 2009, Dr. Hannan found Plaintiff's back pain to have
worsened causing him to increase Plaintiff's Vicodin prescription.
T. 399.   Plaintiff also presented with a left knee issue for which
Dr. Hannan ordered an x-ray. T. 400.   The x-ray revealed
osteoarthritis and small effusion of the left knee. T. 401.
Plaintiff had his left knee examined by Dr. Banwar who gave Plaintiff
a steroid injection in the knee. T. 435.

On January, 20, 2009, Plaintiff was examined by Dr. Hannan for
low back pain.  Dr. Hannan noted that Plaintiff had tried lidocaine
but without relief. T. 402. He prescribed Skelaxin and ordered a
lumbar spine MRI. T. 402.  The MRI showed a small left posterolateral
disc protrusion at T12-L1 level that was new since the prior exam.
There was also left posterolateral disc protrusion at L4-L5 level,
compressing the L5 nerve root which was slightly larger compared to
prior exam and a small left paracentral disc protrusion at L5-S1

9

level that abuts S1 nerve root which showed no change from prior exam. Finally, there was degenerative changes resulting in mild stenosis at L2-L3, mild to moderate spinal stenosis at L3-L4 and moderate spinal stenosis at L4-L5. T. 404.

Dr. Hannan reported in March, 2009 that Plaintiff's back pain improved since the last visit with Lidoderm being effective in combination with Vicodin. T. 405. However, he cautioned that Plaintiff could not yet be gainfully employed. T. 405. The left knee pain was resolved and he discontinued Lorazepam but continued Wellbutrin, Ambien, Plavix, Lisinopril, Vidocin and Lidoderm. T. 405.

A lumbar myelogram was taken of Plaintiff's spine on May 13, 2009. T. 268. The images showed five lumbar type vertebral bodies with normal height alignment and normal disc space was maintained. There was extradural ventral defect at L3-L4 and L4-L5 and the thecal sac narrowed at L4-L5. Disc bulges were seen at T12-T1, L3-L4 and L4-L5. The thecal sac appeared narrowed throughout the lumbar spine below L2. T. 268. Johncox was found to have "moderate central canal narrowing secondary to a diffuse disc bulge at L4-L5 with a left paracentral component." T. 269. He also had short pedicles and parallel facets throughout the lumbar spine. L3-L4 showed moderate central canal narrowing secondary to diffuse disc bulge. T. 269. Mild to moderate neural foraminal narrowing was seen bilaterally. T. 269.

On June 25, 2009, Plaintiff was re-examined by neurosurgeon Dr. Pilcher. T. 428.  Dr. Pilcher noted that conservative treatments of Plaintiff's significant back pain with radiating left leg pain have failed. Dr. Pilcher recommended a left L4-L5 laminectomy and discectomy. Because Johncox had a history of a heart attack and implanted stents, he required cardiac clearance prior to proceeding. T. 428.

In June, 2009, Plaintiff injured his left knee when he was picking up wood.  Dr. Banwar of Interlakes Orthopaedic Surgery, recommended treatment with Hyalgan injections. T. 433.

Dr. Hannan's medical notes of September 1, 2009, indicate that Plaintiff's back pain was unchanged but that the Lidoderm patches were effective in reducing his need for narcotics. T. 606.

An independent psychiatric examination was conducted on September 1, 2009 by Dr. Kavitha Finnity. T. 416.  Dr. Finnity noted that Johncox lived alone and had a high school diploma last employed as a heavy equipment operator.  She noted that Plaintiff was seen for psychotherapy twice a week for three months in 2007 but was currently not in treatment. T. 416. Although Plaintiff reported that he did not have an alcohol problem drinking only about a 12 pack of beer a week socially and used cocaine two to three times a year, she smelled alcohol during the evaluation.  Dr. Finnity diagnosed Plaintiff with

mild psychiatric symptoms of adjustment disorder with anxiety and possible alcohol abuse. T. 419. She recommended Plaintiff seek individual psychological and psychiatric treatment if symptoms persist and worsen. T. 419.

On September 1, 2009, Plaintiff was examined by an independent medical examiner, Dr. Karl Eurenius. Tr. 422-426. During the exam, Plaintiff did not appear in distress and was able to walk, squat and move about without apparent distress nor assistance. T. 423-424. His cervical spine showed full flexion, extension but the lumbar spine showed flexion to approximately 45 degrees with pain felt in the low, middle back. T. 424.  Dr. Eurenius diagnosed Plaintiff with chronic low back pain with neuropathic symptoms, diskogenic, anticipating surgery.  He also found left knee pain with recurrent arthroscopic surgeries and preparing for cortisone injections. Dr. Eurenius also noted Plaintiff's history for reattachment of the third, fourth and fifth fingers with full function returned and heart disease in 2007 with stents implanted. T. 425. Dr. Eurenius opined that Plaintiff was moderately limited in prolonged standing, walking more than a city block, climbing more than a flight of stairs, bending, lifting, carrying more than ten pounds, or kneeling due to chronic low back pain. T. 425.

An independent Mental Residual Functional Capacity Assessment was completed by Dr. Noble on October 1, 2009 based on evidence found

in Plaintiff's file.   Dr. Noble concluded that Plaintiff was not significantly limited in his understanding and memory and social interactions.  T.  468-469.   He found one area of sustained concentration and persistence in which Plaintiff had moderate limitations, that of the ability to perform activities within a schedule, maintain regular attendance and e punctual within customary tolerances. T. 468.  He also found moderate limitation in Plaintiff's ability to respond appropriately to changes in the work setting. T. 469.   In his concluding summary, Dr. Noble noted that Plaintiff had symptoms of sleep difficulties, loss of appetite, mild anxiety and poor frustration due to physical limitations. T. 469. He found Plaintiff to have clear thoughts, clear sensorium, good concentration and memory skills and insight and judgment fair. T. 470. Dr. Noble rated Plaintiffs functional capacity assessment as retaining "the functional capacity to perform the basic mental demands of unskilled to semi-skilled work activity." T. 470.

Plaintiff received a series of steroid injections for osteoarthritis of his left knee in October, 2009. T. 601-3. On December 30, 2009, Dr. Hannan found that Plaintiff's back pain was worse and he changed the Vicodin prescription accordingly. T. 593.

Dr. Hannan next examined Plaintiff on March 29, 2010 when Johncox complained of shoulder pain as well as back pain. T. 584. Dr. Hannan noted that the back pain was now controlled. T. 584.

13

In November, 2010, Plaintiff was having pain in his shoulder and was recommended for rotator cuff surgery after he fell on it playing volleyball. T. 667. He was cleared by his cardiologist passing his echocardiogram.  T. 663.

B. Plaintiff's Hearing Testimony

Johncox testified that he has a high school education and last worked as a heavy equipment operator until November, 2006 when he was laid off. T. 33.  On a typical day, Johncox is able to take care of his dog, watch television, clean and make meals for himself. T. 34. He claims that he does not sleep well because of discomfort in his back and shoulder. T. 35. Johncox testified that he is challenged to clean the house by exhaustion, bending over and keeping his arms out to do such things as dusting. T. 43.  His mother does his laundry because Plaintiff finds it difficult to bend over the washer and fold. T. 43

Johncox testified that he could sit for approximately 20 minutes before he needed to get up. T. 35.  Similarly, he could stand or take a walk for 20 minutes before needing to rest. T. 36.  He thought he could lift 15 or 20 pounds but he had trouble lifting a gallon of milk. T. 36.

Plaintiff smoked one pack of cigarettes per day at the time of the hearing. He was taking Ambien, Aspirin, Hydrocodone, Lidoderm,

Lisinopril, Plavix, Simvastatin and Metroprolol. T. 37. Plaintiff testified that he experienced no side effects from these medications. T. 38.

Plaintiff had shoulder surgery to fix a tear in the rotator cuff May of 2010. T. 38.  Plaintiff had not yet had surgery for his back. T. 38. He tried injections which he claimed worked for a few weeks and then no longer helped. T. 42.  However, Plaintiff testified that he only tried them twice. T. 42. He claimed that he has back pain daily and that it is difficult to get out of bed in the morning. Similarly, Plaintiff experiences knee pain daily in his left knee. T. 42. He treats that pain with injections.

C.   Vocational Expert Testimony

A vocational expert testified that Plaintiff's past work would be considered medium level work or heavy work, skilled and semi-skilled but that the skills would not be transferable to lighter exertional work. T. 46-47.

The ALJ presented a hypothetical individual of the claimant's age, education and experience, limited to light work with the following additional limitations: requiring  a sit/stand option allowing him to alternate between sitting and standing every 30 minutes; only occasional use of ramps and climbing stairs; never climbing ladders, ropes or scaffolds; only occasional push/pull

actions, and no foot control operations with the left lower extremity; occasional balancing, stopping, kneeling, crouching, and crawling; and can do frequent but not constant reaching, including overhead reaching, handling fingering with the non-dominant left upper extremity; and avoid hazards, including moving machinery and unprotected heights. The vocational expert opined that this hypothetical individual could not perform Plaintiff's past relevant work. T. 48. However, he did testify that there were other light work positions the individual could perform such as cashier, ticket seller, and gate attendant. T. 49, 50. In addition, the vocational expert testified that these positions could be done at a sedentary level. T. 50. The ALJ added to the hypothetical the additional limitation that the individual is limited to simple, routine or repetitive tasks and requires a low stress job, defined as only having occasional decision making and occasional changes in the work setting, these same positions would be applicable. T. 50-51. If the individual would also have the limitation that they could be expected to be off-task more than 30 percent of the day or would require unscheduled breaks, more than the two permitted per day or would be absent more than three times a month, the vocational expert opined that none of the jobs would be performable. T. 51.

**DISCUSSION**

I. Scope of Review

Title 42 U.S.C. §405(g) directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). The Court's scope of review is limited to determining whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983).

Judgment on the pleadings pursuant to Rule 12(c) may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that the plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. see generally Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

II.  <u>The Commissioner's Decision to Deny Benefits is Supported by</u>
<u>Substantial Evidence in the Record</u>

The ALJ found that Plaintiff was not disabled within the meaning
of the Social Security Act.  In doing so, the ALJ adhered to the
Social Security Administration's five step sequential analysis
evaluating disability benefits. (Tr. 12-18)  The five step analysis
requires the ALJ to consider the following: 1) whether the claimant
is performing substantial gainful activity; 2) if not, whether the
claimant has a severe impairment which significantly limits his or
her physical or mental ability to do basic work activities;
3) whether the claimant suffers a severe impairment that has lasted
or is expected to last for a continuous period of at least twelve
months, and his impairment(s) meets or medically equals a listed
impairment contained in Appendix 1, Subpart P, Regulation No. 4, if
so, the claimant is presumed disabled; 4) if not, the ALJ next
considers whether the impairment prevents the claimant from doing
past relevant work given his or her residual functional capacity;
5) if the claimant's impairments prevent his or her from doing past
relevant work, whether other work exists in significant numbers in
the national economy that accommodates the claimants residual
functional capacity and vocational factors, the claimant is not
disabled. 20 C.F.R. §§404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

Under step one of the process, the ALJ found that the Plaintiff
had not engaged in substantial gainful activity at any time during

the period from his alleged onset date of January 4, 2007 through his date of last insured of December 31, 2010. (Tr. 59)  The ALJ next found that the Plaintiff suffered from the following severe impairments: degenerative disc disease with disc protrusion of the lumbar spine; arthritis of the left knee; tear of the rotator cuff, left shoulder; and myocardial infarction with cardiac stent. T. 59. At step 3, The ALJ found that Plaintiff's impairments did not meet or medically equal the listed impairments in Appendix 1, Subpart P. (Tr. 60)  Further, the ALJ found that Plaintiff had the residual functional capacity to perform light work except that plaintiff required a sit/stand option allowing him to alternate between a sitting or standing position every 30 minutes, occasional use of ramps and climb stairs but never climb ladders, ropes or scaffolds. T. 60. In addition, Plaintiff was limited to occasional push/pull with the left lower extremity and no foot control operations with the left lower extremity.  He was restricted to occasionally balance, stoop, kneel, crouch or crawl but he could frequently but not constantly reach, including overhead reaching, handling, fingering with the non-dominant left upper extremity. Plaintiff was also found to need to avoid hazards including moving machinery and unprotected heights. T. 61. T. 61.  The ALJ next determined that Plaintiff was not able to perform his past relevant work as a heavy equipment operator, mason or farm worker or mechanic. Tr. 63. Finally, the ALJ determined that considering Plaintiff's age, education, past relevant

work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. T. 64.

Plaintiff argues that the ALJ erred by: 1) failing to properly develop the record by failing to obtain a function by function opinion as to Plaintiff's limitations from treating physician Dr. Hannan; 2) failed to properly evaluate the medical evidence; and 3) failed to properly evaluate his credibility.  I find that there is substantial evidence in the record to support the ALJ conclusion that the Plaintiff was not disabled within the meaning of the Social Security Act.

A.   Substantial Evidence in the Record Supports the ALJ's Decision to Not Seek Further Evidence for the Record

Plaintiff argues that the ALJ erred by failing to develop the record by not requesting a function by function analysis of Plaintiff's limitations from treating physician Dr. Hannan. The duty to develop the record is "particularly important with regards to the opinions of a claimant's treating physician(s), as the ALJ must adhere to the treating physician rule and provide special evidentiary weight to the opinions of a treating physician that are backed by clinical evidence and are not substantially inconsistent with other evidence in the record. Whitney v. Astrue, NO. 09-CV-0484, 2010 U.S.Dist. LEXIS 76485 at *8 (W.D.N.Y. July 29, 2010).  However, where

"there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Evans v. Astrue, No. 12-CV-6002, 2012 WL 6204219, at *6 (W.D.N.Y. Dec. 12, 2012)

Here, the record is fully developed with medical notes from Dr. Hannan as well as other treating and independent examiner physicians. Indeed, during the relevant time period, Plaintiff's monthly and bi-monthly appointments with Dr. Hannan are all documented with details about Dr. Hannan's observations, findings as well as medical opinions. The ALJ opinion is replete with references to Dr. Hannan's records in her decision. The ALJ looked to Dr. Hannan's treatment notes which showed that Plaintiff had mild back pain at rest and with movement in January, March and May, 2007. T. 62, 333, 344, 346, 358 and that there was negative straight leg raising in March, June, July, and August, 2007, April 2008 and January and March 2009. T. 62, 333, 344, 346. The ALJ relied on Dr. Hannan's opinion in August, 2008 that Plaintiff had "mild pain at rest and mild pain with movement" and had improved back pain in September 2008 when Dr. Hannan noted that Plaintiff was able to sit and ambulate easily. T. 62, 392.

I find that there is substantial evidence in the record to support the ALJ decision to not seek further information from Dr. Hannan.

21

The record is complete with thorough medical records from all of Plaintiff's physicians and specifically includes notes from every examination of Dr. Hannan as well as Dr. Hannan's opinions regarding Plaintiff's limitations.   Therefore, the ALJ had no obligation to seek further medical evidence.

B. The ALJ Properly Evaluated the Medical Record

   Plaintiff next contends that the ALJ failed to properly reconcile the opinion of medical consultant R. Noble in establishing Plaintiff's Residual Functional Capacity ("RFC"). Plaintiff maintains that Dr. Noble's opinion of Plaintiff's limitations resulting from his adjustment disorder with anxiety should have been addressed more specifically in the decision. Dr. Noble opined that Plaintiff was moderately limited in his ability to perform activities within a schedule, to maintain regular attendance and be punctual within customary tolerances and moderately limited in his ability to respond appropriately to changes in the work setting. T. 468-71.

   Here, the ALJ did not find that Plaintiff had a severe mental impairment. T. 60. The sequential analysis requires the Commissioner to determine whether a claimant has any "severe impairments", that is, impairments that significantly limit his ability to perform physical or mental work-related activities that meet the 12 month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant

does not have a severe impairment, the claim will be denied. An impairment or a combination of impairments is not severe if it does not significantly limit claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521, Social Security Ruling (SSR) 85-28.

There is substantial evidence to support the ALJ finding that there was no evidence of more than a mild limitation in Plaintiff's abilities to perform basic mental activities. T. 60.  First, the medical records show no treatment for mental impairments nor does any treating physician refer Plaintiff to a mental health provider. While Dr. Noble identified two areas for which Plaintiff had some limitation, he found no significant limitations in Plaintiff's understanding and memory nor in social interactions. T. 469-470 Out of the 7 factors he analyzed under the category of "Sustained Concentration and Persistence", only the one area of maintaining a schedule had any level of limitation. T. 468. In his conclusion, Dr. Noble's summary opinion specifically states that plaintiff "retains the functional capacity to perform the basic mental demands of unskilled to semi-skilled work activity." T. 470.

Plaintiff also questions the weight the ALJ gave the opinion of independent medical examiner, Dr. Finnity, in determining Plaintiff's RFC. The ALJ gave "little weight"  to Dr. Finnity's opinion finding it was based on a one time examination and relied too heavily on

Plaintiff's self reports of symptoms. T. 60. There is substantial evidence in the record to support this conclusion. Dr. Finnity's examination of Plaintiff was essentially normal. T. 469-470. Plaintiff's thought processes were coherent and goal-directed, his mood euthymic and his sensorium clear, attention, concentration and remote and recent memory skills were intact and Plaintiff's insight and judgment were fair. T. 418. Indeed, Dr. Finnity noted during the examination that Plaintiff was capable of following and understanding simple tasks, could maintain attention and concentration and could maintain a regular schedule. T. 418. Moreover, Dr. Finnity specifically found that the examination results appeared to be consistent with only mild psychiatric symptoms and recommended that Plaintiff seek regular treatment if the symptoms worsened. T. 419.

In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. § 404.1545(a)(3)-(4). It is within the province of the ALJ to weigh conflicting evidence in the record and credit that which is more persuasive and consistent with the record as a whole. See, e.g., Veno v Barnhart, 312 F. 3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)); Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir.

1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record.")

The ALJ specifically analyzed the objective medical evidence in the record, the record of Plaintiff's functionality as well as the full opinions of Dr. Noble and Dr. Finnity. To the extent there is even a conflict of opinion, the ALJ properly weighed their opinions. Substantial evidence supports the ALJ conclusion that Plaintiff's mental impairments are not severe. T. 60.

B.   The ALJ's Credibility Assessment is Supported by Substantial Evidence

In determining Plaintiff's residual functional capacity, the ALJ considered Plaintiff's statements about his subjective complaints of pain and functional limitations and found that they were not entirely credible. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's symptoms, but that Plaintiff's statements regarding the "intensity, persistence and limiting effects of those symptoms are not credible to the extent that they were inconsistent with the residual functional capacity assessment." T. 61. Plaintiff argues that the ALJ's credibility determination is unsupported by substantial evidence.

"The assessment of a claimant's ability to work will often depend on the credibility of her statements concerning the intensity,

persistence and limiting effects of her symptoms." Otero v. Colvin, 12-CV-4757, 2013 WL 1148769, at *7 (E.D.N.Y. Mar. 19, 2013). Thus, it is not logical to decide a claimant's RFC prior to assessing her credibility. Id. This Court, as well as others in this Circuit, have found it improper for an ALJ to find a Plaintiff's statements not fully credible simply "because those statements are inconsistent with the ALJ's own RFC finding." Ubiles v. Astrue, No. 11-CV-6340T (MAT), 2012 WL 2572772, at *12 (W.D.N.Y. July 2, 2012) (citing Nelson v. Astrue, No. 5:09-CV-00909, 2012 WL 2010 3522304, at *6 (N.D.N.Y. Aug. 12, 2010), report and recommendation adopted, 2010 WL 3522302 (N.D.N.Y. Sept. 1, 2010); other citations omitted)). Instead, SSR 96-7p requires that "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record." SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996); 20 C.F.R. §§ 404.1529, 416.929.

However here, the ALJ measured Plaintiff's credibility by evaluating all of the required factors bearing on Plaintiff's credibility prior to deciding Plaintiff's RFC. She discussed Plaintiff's daily activities, frequency and intensity of Plaintiff's symptoms, the effectiveness of medication and the treatment of Plaintiff's symptoms. The ALJ determines issues of credibility and great deference is given her judgment. Gernavage v. Shalala, 882 F.Supp. 1413, 1419, n.6 (S.D.N.Y. 1995).

The ALJ noted that despite complaints of disabling limitations, Plaintiff admitted to Dr. Hannan that he had only mild pain and could ambulate easily before requesting that Dr. Hannan clear him to go back to work. T. 62, 393, 394. The ALJ also noted that Plaintiff's treatment was conservative in nature, consisting primarily of pain management and that his pain was managed by medication. T. 38, 62, 63, 383, 386, 584. The ALJ also noted that Plaintiff lived alone and could manage his personal care including cooking, cleaning and socializing. Plaintiff also testified that he could lift up to 20 pounds. T. 36. The record also has evidence of activities by Plaintiff that belie his credibility as to the disabling nature of his pain.  For example, in September, 2007, Plaintiff was on his roof, in June, 2009, he was picking up wood and in November 2010, he was playing volleyball. T. 441,433 and 667.

The ALJ did not discount Plaintiff's complaints entirely. Rather, in assessing Plaintiff's residual functional capacity, the ALJ determined that Plaintiff was unable to perform more than light work with additional limitations such as requiring him the option to sit or stand every 30 minutes, as well as limits to use of ramps, stairs and other physical movements. Accordingly, Plaintiff's argument that the ALJ failed to properly assess his subjective complaints is rejected.

D. <u>There is Substantial Evidence in the Record to Support the ALJ Finding that Plaintiff Could Perform Jobs which Exist in Significant Numbers in the National Economy</u>

Lastly, Plaintiff argues that the ALJ erred when she relied on the vocational expert ("VE") in determining that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. T. 64.

At step five, the burden is on the Commissioner to prove that "there is other gainful work in the national economy which the claimant could perform." <u>Balsamo v. Chater</u>, 142 F.3d 75 (2d Cir. 1998). The ALJ properly may rely on an outside expert, but there must be "substantial record evidence to support the assumption upon which the vocational expert based his opinion." <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1554 (2d Cir. 1983). A VE's opinion in response to an incomplete hypothetical question cannot provide substantial evidence to support a denial of disability. <u>See</u> <u>DeLeon v. Secretary of Health and Human Servs.</u>, 734 F.2d. 930, 936 (2d Cir. 1984).

Plaintiff argues that the hypothetical posed to the VE was incomplete because it was based on an erroneous RFC due to the ALJ's errors with regard to assessing Plaintiff's credibility, development of the record and proper weighing of medical evidence.

The VE testified at Plaintiff's hearing that a hypothetical individual with limitations that corresponded to the ALJ's RFC assessment could perform the jobs of cashier, ticket seller and gate attendant. T. 48-49.  The VE considered an individual who could

perform light work but that also needed to sit/stand throughout the day at 30 minute intervals and have limitations with regard to certain physical activities. Because there is substantial evidence in the record to support the RFC assessment of the ALJ, the ALJ is entitled to rely on the vocational expert's testimony that Plaintiff could perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §404.1560(b)(2).

## CONCLUSION

After careful review of the entire record, and for the reasons stated, this Court finds that the Commissioner's denial of DIB was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the Commissioner's decision is affirmed. For the reasons stated above, the Court grants Commissioner's motion for judgment on the pleadings (Dkt. No. 9). Plaintiff's motion for judgment on the pleadings is denied (Dkt. No. 6), and Plaintiff's complaint (Dkt. No. 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

**S/Michael A. Telesca**

_____
Honorable Michael A. Telesca
United States District Judge

DATED: September 9, 2013
        Rochester, New York